**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

WARREN H. HESTER,

          Petitioner,

v.                                    CIVIL ACTION NO.   5:13-cv-21007

DAVID BALLARD,

          Respondent.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Petitioner's July 26, 2013 *Petition* under 28 U.S.C. § 2254 (Document No. 2), brought on the grounds that his state criminal conviction and subsequent state habeas proceeding violated his federal Constitutional rights.   In addition, the Court has reviewed the *Memorandum of Law in Support of Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Document 3), the *Respondent's Answer* (Document 34), the *Respondent's Motion for Summary Judgment* (Document 36) and *Memorandum of Law in Support of Respondent's Motion for Summary Judgment* (Document 37), the *Petitioner's Traverse to 'Respondent's Answer'* (Document 42), the Respondent's *Response to Petitioner's 'Traverse'* (Document 43), and the *Petitioner's Objection to 'Respondent's Motion for Summary Judgment' and 'Memorandum of Law in Support of Respondent's Motion for Summary Judgment'* (Document 46).   In addition, the Court has reviewed all attached exhibits.

1

By *Standing Order* (Document 4) entered on July 31, 2013, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. On June 16, 2015, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (PF&R) (Document 53), wherein it is recommended that this Court grant the Respondent's motion for summary judgment, dismiss the Petitioner's petition, and remove this matter from the Court's docket. Objections to the Magistrate Judge's PF&R were due by July 6, 2015. On June 26, 2015, the Petitioner timely filed *Petitioner's Objections to Magistrate Judge R. Clarke Vandervort's Proposed Findings and Recommendation* (Document 54). For the reasons stated herein, the Court finds that the Petitioner's objections must be overruled, the Magistrate Judge's PF&R adopted, and summary judgment entered in favor of the Respondent.

## FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge's PF&R sets forth the factual and procedural background of this case in detail. The Court hereby incorporates those factual findings, but, in order to provide context for the ruling contained herein, provides the following summary.

The Petitioner was charged in 2005 with first degree sexual assault, battery, brandishing a deadly weapon, kidnaping, and nighttime burglary. (PF&R at 11.) The victim, an 11-year-old girl, alleged that the Petitioner came to her house on January 20, 2005. (*Id.*) He allegedly returned around 11:00 or 11:30 p.m., when the victim was home alone with her two younger brothers after her mother had left for work, and claimed that the victim's mother gave him permission to stay at the house. (*Id.* at 11–12.) There was no telephone in the house. (*Omnibus Habeas Corpus Final Judgment Order*, *State of West Virginia ex. rel. Hester v. Ballard*, Civ. Act.

2

No. 08-C-716-H (Cir. Ct. Raleigh Cty., Mar. 2, 2012, at 8)) (hereinafter, Omnibus Habeas Order.) The victim testified that she fell asleep on the couch, but was awakened by the Petitioner removing her sock. (PF&R at 12.) When she tried to leave to contact neighbors, the Petitioner allegedly told her the neighbors were in bed. (*Id.*) The Petitioner asked to suck her toes, and grabbed her and held a kitchen knife to her face when she said no. (*Id.*) The victim stated that the Petitioner led her upstairs, told her to remove her clothing, forced her to perform oral sex on him and performed oral sex on her. (*Id.*) He allowed her to dress and return downstairs, where he forced her to sit on his lap while he sucked her toes. (*Id.*) He left the house about ten minutes before the victim's mother returned from work. (*Id.*)

The trial court permitted testimony related to two prior juvenile offenses. (*Id.* at 17.) In both instances, the Petitioner burglarized women's homes to sexually assault them, and both cases involved "the unusual aspect of sucking the toes of his victims." (*Id.*, quoting Omnibus Habeas Order at 59–60.) The victims of those offenses testified at trial, and the prosecutor highlighted the similar prior offenses during her closing argument. (Omnibus Habeas Order at 11, 63.)

A semen stain was discovered on a pillow in the victim's bedroom. (PF&R at 26–28.) The DNA results did not match the DNA of the Petitioner. (*Id.*) The trial court excluded reference to the DNA, finding it irrelevant. (*Id.* at 28–29.) The state habeas court found the exclusion proper, reasoning that no evidence linked anyone else to the crime, and there was no evidence that the perpetrator ejaculated during the sexual assault. (*Id.* at 29, quoting from Omnibus Habeas Order.) Thus, the court found, testimony suggesting that the semen belonged to an unknown perpetrator of the crime would have been impermissibly speculative. (*Id.*)

Shortly before trial, the Petitioner's counsel sought permission to withdraw due to conflicts of interest based on his office's prior representation of witnesses for the prosecution. (Jan. 3, 2006 Pre-Trial Hearing Transcript, Case No. 05-F-189) (Document 41-11.) The trial court denied his motion, finding that (a) there was no conflict with respect to Derrick Mickles[1] because his involvement in the present case was extremely limited in scope, and (b) Lisa Hartman[2] waived attorney-client privilege to permit use of confidential information on cross-examination. (Jan. 3, 2006 Pre-Trial Hearing Transcript; Jan. 4, 2006 Tr. Transcript I, at p. 26–27, Document 41-12.)

The victim testified that she knew the Petitioner by sight and name because he had been to her house to visit along with family friends on two or three prior occasions. (Jan. 6, 2006 Tr. Transcript III at 505, Document 41-14.) The victim and her mother both testified that, upon her mother's return home, the victim first asked whether her mother had given "Warren" permission to stay in the house, and then said that he had raped her. (*Id.* at 438–39, 522–23.) The victim identified him by name to the responding police officer. (Jan. 5, 2006 Tr. Transcript II at 331–34, Document 41-13.) She later identified him from a photo array with no hesitation. (Jan. 6, 2006 Tr. Transcript IV at 742–44, Document 41-15.) The victim testified during trial and described the events of the evening of January 20, 2005, into the morning of January 21, 2005, including her attempts to leave, the Petitioner's threats, and the sexual assaults. (Jan. 6, 2006 Tr. Transcript at 496–567.)

---

1 Mr. Mickles was the victim's mother's boyfriend. He accompanied the responding officer to the Petitioner's home because he was acquainted with him but could not recall the address. The Petitioner's attorney also suggested that an attorney without a conflict of interest might wish to investigate him as an alternative source of the DNA found on the victim's pillow.
2 Ms. Hartman was a neighbor of the victim's, and testified that the Petitioner was at her home earlier in the day on January 20, 2005, and that she permitted him to suck her toes in return for beer.

The Petitioner testified in his own defense, asserting that he was innocent of the charges. (*See* January 10, 2006 Tr. Transcript V at 948–1028, Document 41-16.) He contended that he was at a club for recovering addicts until 11:00 p.m., on January 20, 2005, and walked home thereafter, via a route that did not pass the victim's house. (*Id.* at 958–60.) He indicated that he cooperated with the investigation and readily agreed to submit a sample for a DNA test upon being notified that DNA was found. (*Id.* at 972.) He admitted to the details of his juvenile offenses during an extensive cross-examination. (*Id.* at 975–1005.)

On January 11, 2006, a jury in Raleigh County, West Virginia, convicted the Petitioner of two counts of First Degree Sexual Assault, one count of Battery, one count of Brandishing a Deadly Weapon, one count of Kidnaping, and one count of Nighttime Burglary. (PF&R at 1.) He was sentenced to fifteen to thirty-five years on each sexual assault conviction, six months on the battery conviction, one year on the brandishing, life without parole on the kidnaping, and one to fifteen years on the nighttime burglary conviction, all to run consecutively. (PF&R at 2.)

The Petitioner's appeal with the West Virginia Supreme Court of Appeals was denied on May 22, 2008, and the United States Supreme Court denied his petition for certiorari. (*Id.* at 3.) He filed a petition for a writ of habeas corpus in the Circuit Court of Raleigh County on August 11, 2008. (*Id.*) The Petitioner declined counsel, but the Circuit Court appointed an attorney to act in an advisory capacity. (*Id.* at 4–5.) When the Petitioner refused to complete a list setting forth the grounds on which he was seeking relief pursuant to *Losh v. McKenzie*, 277 S.E.2d 606 (W.Va. 1981), the Circuit Court addressed all possible *Losh* grounds, as well as the specific arguments put forth by the Petitioner. (*Id.* at 6.) On March 2, 2012, the Circuit Court issued an

5

order denying the petition. The West Virginia Supreme Court of Appeals affirmed the decision of the Circuit Court on April 19, 2013. (*Id.* at 7.)

The Petitioner initiated this action on July 26, 2013, alleging grounds for *habeas* relief that track the grounds for relief asserted in the state *habeas* proceedings. He alleges the following grounds for relief:

> 1. The criminal trial court allowed, and the State prosecutor used, Petitioner's District of Columbia and State of Ohio family court civil juvenile record excessively and as case-in-chief evidence, in derogation of (and Petitioner's rights to) the United States Constitution and Federal Statutes.
>
> 2. West Virginia Code § 49-7-3, § 49-7-1, and 49-5-17(d) are unconstitutional and denied Petitioner the equal protection of the law in violation of the United States Constitution's 14th Amendment itself and Petitioner's rights thereof.
>
> 3. The criminal trial court denied Petitioner [the opportunity] to present exculpatory DNA seminal fluid case evidence to the jury in violation of (and Petitioner's rights to) the United States Constitution.
>
> 4. Petitioner's trial counsel and/or his law office was ineffective in: (a) failing to conduct a proper and effective alibi defense; (b) forced to represent [despite] conflicts of interest; (c) failing to argue the full faith and credit of juvenile record prohibitions; (d) failing to object to prosecutor's falsification of DNA case evidence; and (e) failing to object to religious questioning of [the] State's star witness, in violation of (and Petitioner's rights to) the United States Constitution.
>
> 5. The State prosecutor (a) falsified exculpatory case evidence to the jury; (b) asked the State's star witness religious questions in front of the jury; and (c) used Petitioner's juvenile record as chief evidence, in derogation of (and Petitioner's rights to) the United States Constitution.
>
> 6. The Circuit Court granting of the Respondent's motion to deny Petitioner to argue ineffective appellate counsel as a ground in

6

>his habeas petition was unconstitutional, in violation of (and Petitioner's rights to) the United States Constitution.
>
>7. Petitioner's direct appeal counsel acted ineffectively by failing to conduct Petitioner's direct appeal effectively in violation of (and Petitioner's rights to) the United States Constitution.

(Pet.'s Mem. in Supp. of Pet. at 7–21, Document 2) (some punctuation altered for clarity) (*see also* PF&R at 7–8.)

## STANDARD OF REVIEW

### A. PF&R Objections

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

### B. Motions Pursuant to 28 U.S.C. § 2254

28 U.S.C. § 2254 provides for federal review of a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or

7

treaties of the United States." 28 U.S.C. § 2254(a). Petitioners must exhaust all available state remedies. *Id.* § 2254(b)(1). Furthermore:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2). Factual determinations made by a state court are presumed correct, and petitioners must rebut that presumption by clear and convincing evidence. *Id.* § 2254(e)(1).

Federal review of motions brought by prisoners in state custody under 28 U.S.C. § 2252 is highly deferential. *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011); *Robinson v. Polk*, 438 F.3d 350, 354-55 (4th Cir. 2006). The Supreme Court explains that the "contrary to" clause of § 2254(d)(1) means that "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The "unreasonable application" clause of that section means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"Under § 2254(d), a habeas court must determine what arguments or theories supported or…could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding

8

in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012) (holding that habeas relief is unavailable unless "*each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." If a state court applied the appropriate legal standard in a reasonable manner, the federal court may not grant habeas relief even if it would have reached a different conclusion. *Williams*, 529 U.S. at 406. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).

## DISCUSSION

### A. Use of Out-of-State Juvenile Records

The Petitioner asserts that the prosecution's use of his juvenile records from Washington, D.C., and Ohio was both erroneous and unconstitutional, in violation of the Equal Protection Clause of the 14th Amendment and the Full Faith and Credit Clause of Article IV, Section I, because West Virginia law prohibits the introduction of West Virginia juvenile records. The Magistrate Judge found that federal habeas relief was unavailable, explaining that "federal *habeas* relief is available with respect to a trial court's evidentiary rulings, only if the ruling denied the defendant the right to a fair trial." (PF&R at 19.) The Magistrate Judge found that the evidence, admitted with a limiting instruction following a hearing, did not "render Petitioner's trial fundamentally unfair." (*Id.* at 20–21.) He next held that the provisions of West Virginia Code limiting the release of juvenile records apply only to West Virginia records. (*Id.* at 25–26.) Because there is no evidence that the state inconsistently applies those provisions to some out-of-

9

state records but not others, the Magistrate Judge found the equal protection claim to be without merit. (*Id.* at 26.)

The Petitioner objects. He argues that Washington, D.C., and Ohio have similar laws protecting juvenile records from disclosure, and the Full Faith and Credit Clause of the United States Constitution requires that West Virginia officials respect those limitations. (Obj. at 6–8.) He further contends that the West Virginia statute limiting release of juvenile records, as interpreted by the state and federal courts that have considered his case, violates the Equal Protection Clause by offering protection to some criminal defendants but not others. (*Id.* at 11–12.) He argues that the focus on West Virginia Rule of Evidence 404(b) is misplaced because juvenile records are inadmissible regardless of evidentiary rules. (*Id.* at 9.)

The Court finds that the Magistrate Judge correctly analyzed the issues surrounding the admission of the Petitioner's juvenile record. The Petitioner's two prior juvenile convictions were admitted both through the testimony of the victims and through his cross examination, over the vehement objections of his counsel. Under the standard for federal habeas relief, the Petitioner would have to demonstrate that the admission of those records was contrary to, or an unreasonable application of, clearly established *federal* law. Arguments regarding the proper scope of West Virginia Code § 49-4-103[3] are not properly before this Court. The Petitioner cites *Workman v. Cardwell*, 338 F.Supp. 893, 898 (N.D. Ohio 1972) *aff'd in part, vacated in part,* 471 F.2d 909 (6th Cir. 1972), to support his position that states cannot admit protected juvenile records from other jurisdictions. That case briefly quotes an Ohio statute limiting the use of juvenile convictions, but that court analyzed and relied upon a finding that the juvenile convictions in question were

---

3 Previously codified as W.Va. Code § 49-7-3.

constitutionally infirm because the petitioner lacked counsel during the juvenile proceedings. *Workman*, 338 F.Supp. at 898. There is no contention that the juvenile convictions in this case were themselves unconstitutional.

A state law barring the use of in-state juvenile records in subsequent proceedings does not violate the Constitution. The Petitioner's Equal Protection argument is essentially that criminal defendants like him, with out-of-state juvenile records, are treated differently than criminal defendants with in-state juvenile records. Because the classes at issue are not subject to heightened scrutiny, the state would need only to show that it has a rational basis for applying a different standard to the two types of records. West Virginia could rationally choose to limit access to the records created in its own juvenile justice system, over which it exercises control, while giving judges discretion in handling records from other jurisdictions that may have differing standards for trying individuals as juveniles.[4]

The Petitioner's Full Faith and Credit argument is likewise unavailing. "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998) (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 501 (1939)). A West Virginia court is not obligated to follow Washington, D.C., or Ohio laws regarding juvenile records.[5] Accordingly, the Court

---

[4] *See* Omnibus Habeas Order at 62. ("Had the Petition[er] been convicted of the sexually violent crimes as a fifteen-year-old in the State of West Virginia, the cases would very likely have been transferred to the criminal court.")

[5] States, of course, can control access to such records by declining to release them. Indeed, it appears from the record that the Washington, D.C., records were released only with a waiver from the Petitioner, signed after the Prosecutor identified and contacted the victim to testify. (Jan. 9, 2006, Tr. Transcript IV at 689–91; 784–97, Document 41-15.)

finds that the state *habeas* court did not apply federal law in an unreasonable manner with respect to the treatment of the Petitioner's juvenile records.

    B.  *DNA Evidence*

The Petitioner next contends that his constitutional right to a fair trial was prejudiced by the trial court's exclusion of DNA evidence found on the victim's bedding that did not match him. The Magistrate Judge found that there was "no indication that the exclusion of the unknown semen stain infringed upon a weighty interest or significantly undermined the fundamental elements of Petitioner's defense resulting in a violation of due process." (PF&R at 32) (internal quotation marks omitted.) He noted that the Petitioner presented an alibi defense, which was not impacted by the unidentified DNA. (*Id.* at 31.) The Magistrate Judge also highlighted the victim's immediate identification of the Petitioner and her testimony that he did not ejaculate during the sexual assault. (*Id.* at 31–32.)

The Petitioner argues that the DNA seminal fluid was exculpatory, regardless of whether it could be tied to a specific individual. He objects to the reliance on statements that the pillow was sometimes used in the mother's bedroom, and that the victim's aunt and her boyfriend sometimes slept in the victim's room, because the prosecutor made those arguments during evidentiary hearings without witness testimony. He argues that his "alibi defense and a third party guilt of exculpatory evidence defense, goes hand [in] hand" because if he was not there to commit the offense, someone else must have been responsible. (Obj. at 17–18.) The Petitioner points out that, had tests shown the DNA to be his, the prosecutor would have treated it as an important and highly relevant piece of evidence. (*Id.* at 21.) He contends that excluding the DNA evidence

12

constitutes a due process violation because he was denied the opportunity to fully defend himself. (*Id.* at 20–21.)

The Fourth Circuit has held that "[i]n federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000). In somewhat analogous consideration of application of a rape-shield statute, the court cited Supreme Court precedent to hold that "[t]he *Rock–Lucas* Principle clearly mandates that a state court, in ruling on the admissibility of evidence under a rape shield law, must eschew the application of any per se rule in favor of a case-by-case assessment of whether the relevant exclusionary rule 'is arbitrary or disproportionate to the State's legitimate interests.'" *Barbe v. McBride*, 521 F.3d 443, 458 (4th Cir. 2008) (internal citation omitted). The DNA evidence in the instant case was excluded not based on a rape shield law but as irrelevant and speculative under West Virginia case law barring testimony implicating another party without a direct link between such person and the crime. (PF&R at 28–30.)

Without examining whether the state court properly interpreted state evidentiary rules, the Court finds that the exclusion of the DNA evidence[6] did not violate the Petitioner's right to due process. *See, e.g.*, *Barbe*, 521 F.3d at 453 ("we confine our consideration of the Confrontation Issue to the question of whether the [evidentiary] Ruling contravened [the petitioner's] Sixth Amendment confrontation right, without examining such issues as whether the state circuit court properly interpreted the [state law] itself.") During a pre-trial hearing and at trial, the trial judge

---

6 The Court notes that the trial court permitted testimony that the Petitioner's DNA was not found at the scene, and that he was willing to undergo DNA testing. It excluded any testimony suggesting that the unidentified DNA belonged to the actual perpetrator of the crime.

13

considered the Petitioner's arguments for further investigation and testimony regarding the unidentified semen. He gave the defense an opportunity to return with argument or evidence that would justify further investigation, but it was unable to do so. The question for this Court to consider is not whether it would have made the same evidentiary ruling, but whether the state habeas court applied federal law in an unreasonable manner when it denied relief. Given the dearth of evidence suggesting that someone else committed the crime in question, and the immediacy and consistency of the victim's identification of the Petitioner as the perpetrator, the Court cannot find that excluding the DNA evidence deprived the Petitioner of due process.

### C. *Ineffective Assistance of Counsel*

The Petitioner asserts that his trial counsel was ineffective because he did not adequately investigate the Petitioner's alibi, had conflicts of interest, and did not adequately object to the evidentiary rulings discussed above and to religious questioning of the victim. The Magistrate Judge reviewed the state circuit court's findings and concluded that the Petitioner had failed to overcome the presumption that his counsel's decisions regarding the alibi defense were not supported by a reasonable trial strategy. He next noted that the Petitioner's attorney attempted to withdraw based on his conflicts of interest, but the trial court found no material conflict of interest after one witness waived attorney-client privilege. The Magistrate Judge found that the Petitioner failed to show that any state ruling regarding his counsel's alleged conflict(s) of interest was contrary to, or an unreasonable application of, federal law. He likewise found that the Petitioner failed to provide sufficient support for his allegations that his attorney was ineffective in objecting to evidentiary rulings or trial testimony.

With respect to his alibi defense, the Petitioner asserts that his counsel was ineffective in (a) failing to timely inform the court and the prosecutor of his alibi defense, (b) failing to promptly investigate the defense and identify potential witnesses, and (c) failing to call the alibi witnesses to testify. He argues that "[t]here is no 'strategic reason [nor]…strategy' [his counsel] nor any other lawyer in the world could give for presenting the Petitioner's alibi defense to the State court and State prosecutor six (6) months late, investigating the Petitioner's alibi twelve (12) months late or not calling Petitioner's alibi witnesses to testify." (Obj. at 30.) As to the asserted conflict of interest, the Petitioner argues that he was prejudiced because his attorney was unable to investigate the victim's mother's boyfriend as a potential source of the semen found on the victim's bedding and unable to effectively cross-examine a state witness he had previously represented. (*Id.* at 31–38.) The Petitioner did not object to the Magistrate Judge's findings with respect to his other asserted grounds for claiming ineffective assistance of counsel.

Criminal defendants claiming ineffective assistance of counsel must demonstrate that (a) "counsel's representation fell below an objective standard of reasonableness," and (b) the defense was actually prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). Courts must apply a "strong presumption" that an attorney's representation "falls within the wide range of reasonable professional assistance." *Id.* at 689. In cases of conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 692 (internal quotation marks and citations omitted.) Furthermore, ineffective assistance of counsel claims are subject to the strictures of review under § 2254(d). "[I]t is not enough to convince a federal habeas court that, in its independent judgment,

the state-court decision applied *Strickland* incorrectly. Rather, [the petitioner] must show that [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (internal citation omitted).

The state habeas court found that the Petitioner's counsel did raise an alibi defense and presented all available evidence. (PF&R at 35–36, quoting from Omnibus Habeas Order.) It found that, because the Petitioner was unable to give names of witnesses who could support his alibi, extensive investigation to attempt to find such witnesses at the Fellowship Home or Toolbox Clubhouse[7] would have been futile. With no additional witnesses to present, the delay in notifying the prosecutor and the trial court of the alibi defense had no impact on the Petitioner's case.[8] The Petitioner cannot overcome the presumption that his counsel's representation fell within the wide range of reasonable representation, much less demonstrate that the state habeas court applied *Strickland* in an objectively unreasonable manner.

The state habeas court also found that no conflict of interest impacted the Petitioner's case. Defense counsel had previously represented one witness, Lisa Hartman, who testified that the Petitioner was in her home, located across the street from the victim's home, on January 20, 2005. (Omnibus Habeas Order at 38.) She testified that the Petitioner offered her beer if she would permit him to suck her toes and she accepted. (*Id.*) The state trial judge appointed independent counsel for Ms. Hartman prior to her testimony, and she waived attorney-client privilege to permit the Petitioner's counsel to cross examine her using information gained during her attorney-client

---

7 The record reveals that the Fellowship Home was a halfway house of sorts, with constantly changing residents, while the Toolbox Clubhouse was a meeting place for people with substance abuse problems, also with a changing clientele.

8 The only limitation imposed by the trial court because of the untimeliness was that new, undisclosed witnesses could not be presented, and even that limitation was imposed only after defense counsel indicated that the defense intended to call only witnesses the State had already interviewed. *See* Dec. 21, 2005 Pretrial Hearing Tr. at 6–8 (Document 41-10).

relationship with defense counsel. (*Id.* at 36–39.) Thus, no conflict of interest impacted Petitioner's counsel with respect to Ms. Hartman.

The Petitioner's counsel also represented Mr. Mickles, the victim's mother's boyfriend, who did not testify at trial. The attorney moved to withdraw based on his representation of Mr. Mickles, suggesting that an attorney without a conflict of interest might wish to investigate Mr. Mickles as a possible source of the semen stain found on the victim's pillow. (*Id.* at 34.) The trial court denied the motion to withdraw, finding that the evidence would not support an order for a DNA test of Mr. Mickles simply because he was a regular visitor to the victim's home. (*Id.* at 35.) The state habeas court found that there was no conflict of interest because Mr. Mickles was neither a witness in the trial nor a person of interest in the investigation. (*Id.* at 35–36.) This Court is likewise unable to find that either purported conflict of interest could have impacted the Petitioner's counsel's representation. Once again, the Petitioner has not shown that the state habeas court applied *Strickland* in an objectively unreasonable manner.

### D. Misconduct of the State Prosecutor

The Petitioner next asserts that the State prosecutor falsified exculpatory evidence before the jury, improperly asked the victim religious questions, and improperly used the Petitioner's juvenile record. The Magistrate Judge found that the Petitioner's claims related to the references to his juvenile record and the lack of DNA evidence were without merit, given the standard for review of claims of prosecutorial misconduct and the prior rulings regarding those issues. (PF&R at 49–50.) He also found that the religious questioning was brief and directed only at establishing the minor victim's competence. (*Id*. at 50–51.)

17

The Petitioner objects only to the finding that the use of the Petitioner's juvenile records was not misconduct, and so the Court will address only that ground for relief. The standard for prosecutorial misconduct is whether the allegedly improper remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)). Because the Court has found, *supra* Part A, that the admission of the juvenile records did not implicate the Petitioner's constitutional rights, it follows that the state prosecutor's use of those records cannot support relief under § 2254. Accordingly, the Petitioner's objections must be overruled and the Magistrate Judge's PF&R must be adopted.

## CONCLUSION

WHEREFORE, following thorough review and careful consideration, the Court hereby **OVERRULES** the *Petitioner's Objections to Magistrate Judge R. Clarke Vandervort's Proposed Findings and Recommendation* (Document 54) and **ADOPTS** and incorporates herein the findings and recommendation of the Magistrate Judge as contained in the *Proposed Findings and Recommendation* (Document 53.) The Court **ORDERS** that the *Respondent's Motion for Summary Judgment* (Document 36) be **GRANTED**, that the Petitioner's *Petition* (Document 2) be **DISMISSED,** and that this case be removed from the Court's docket.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.

*Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge VanDervort, to counsel of record, and to any unrepresented party.

ENTER: September 17, 2015

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA